IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL HETZNECKER,

Plaintiff,

v.

NATIONAL SECURITY AGENCY,
CENTRAL INTELLIGENCE AGENCY, and
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

CIVIL ACTION NO. 16-cv-0945

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, the Federal Bureau of Investigation ("FBI"), National Security Agency ("NSA"), and the Central Intelligence Agency ("CIA") submit this reply brief in support of their motion for summary judgment.

## ARGUMENT

## I. THE FBI CONDUCTED AN ADEQUATE SEARCH FOR DOCUMENTS

### A. The FBI Reasonably Interpreted Plaintiff's FOIA Request

In his FOIA request, Plaintiff requested that the FBI provide information related to law enforcement involvement in "discussions, communications and technical support as well as surveillance regarding the Occupy Philly Movement, as well as Occupy encampments in cities around the country." *See* Declaration of David M. Hardy dated September 9, 2016 ("Hardy Dec."), attached as Exhibit 1 to Defendants' Motion for Summary Judgment, Exhibit A. Plaintiff specified that his FOIA request included communications by law enforcement pertaining to the "Occupy Philly movement" and the "Occupy Philly encampments." *Id*. Plaintiff further stated

that his FOIA request encompassed "any and all" documents and information "pertaining to the federal government's coordination of, or advice or consultation regarding, the police response to the Occupy Philly Movement, protests or encampments." *Id*. Plaintiff asserted that his FOIA request encompassed "any and all communications about the Occupy Philly encampment," including "planned responses to the Occupy Philly encampments" and "health and safety concerns regarding the Occupy Philly encampment." *Id*. Finally, Plaintiff summarized that the request concerned the public's right to know about "enforcement actions and surveillance of the Occupy Philly protest movement." *Id*.

In his brief, Plaintiff contends that the FBI's search for documents was inadequate because while the FBI searched for documents relating to Occupy Philly, the FBI did not also search for "Occupy encampments in cities through the country." Response to Defendant's [sic] Motion for Summary Judgment ("Plaintiff's Brief") at 13. As we will show, the FBI reasonably interpreted Plaintiff's FOIA request as seeking documents concerning "Occupy Philly," rather than encompassing any possible "Occupy" movement anywhere in the country.

A FOIA request for records must "reasonably describe[]" the records being sought. 5 U.S.C. § 552(a)(3)(A). A FOIA request satisfies this requirement if the federal agency can reasonably ascertain exactly which records are being requested. *See*, *e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (affirming adequacy of search based on agency's reasonable determination regarding records being requested); *Stuler v. IRS*, 216 F. App'x 240, 242 (3d Cir. 2007) (affirming district court's dismissal of case where requester was not "clear in articulating the documents [she] sought").

Courts have recognized that "broad, sweeping requests lacking specificity" do not "reasonably describe" the records being sought. *Marks v. U.S. (Dep't of Justice)*, 578 F.2d 261, 263 (9th Cir. 1978). *See Assassination Archives and Research Ctr, Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) (stating that it is requester's responsibility "to enable the searching agency to determine precisely what records are being requested"), *aff'd in pertinent part*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) An agency's FOIA staff is not required to have "clairvoyant capabilities" to discern the documents being requested. *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987). Indeed, the legislative history indicates that a FOIA request would only be sufficient "if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Marks*, 578 F.2d at 263, *quoting* H. Rep. No. 93-876 93rd Cong., 2d Sess. 6 (1974), U.S. Code Cong. & Admin. News 6267, 6271.

Although Plaintiff vaguely referred on one occasion to "Occupy encampments in cities around the country," it is clear from his entire FOIA request that Plaintiff was seeking records concerning the Occupy Philly movement and not, as he now suggests, any Occupy encampment, anywhere in the United States. Plaintiff repeatedly stated in his FOIA request that he was seeking documents concerning Occupy Philly. *See* Hardy Dec., Exhibit A. He makes no reference to any "Occupy movement" in his FOIA request besides "Occupy Philly." *Id*. In fact, in the context of the request, it is reasonable to believe that Plaintiff's passing reference to Occupy encampments in other cities was nothing more than a reference to encampments that the Occupy Philly movement may have had in other cities. In any event, a request for all documents concerning any Occupy encampment anywhere in the United States, none of which are specifically identified,

would be the sort of "broad sweeping request lacking specificity" that fails to reasonably describe the records being requested as required by the statute. *Marks*, 578 F.2d at 263. The FBI reasonably determined that Plaintiff's FOIA request sought documents concerning the Occupy Philly movement and properly searched for such documents.

### B. <u>The FBI's Search for Records was Adequate</u>

Plaintiff asserts that the FBI's search for records was inadequate because "there are many more documents that are in the possession of the FBI responsive to Plaintiff's request." Plaintiff's Brief at 18. Plaintiff claims that documents supposedly produced in response to other FOIA requests show that the FBI "conducted extensive surveillance of the Occupy movement in numerous locations throughout the country." *Id*. Plaintiff contends, without any citation, that "a review of the redacted information released pursuant to FOIA confirms this national effort by the FBI and a connection to the Occupy Philly movement." *Id*. Finally, Plaintiff declares that a document about FBI policies concerning confidential sources somehow suggests that there must be "thousands of documents in the possession of the FBI responsive to Plaintiff's request." *Id*. at 20. None of Plaintiff's unsupported and speculative claims undermines the adequacy of the FBI's search.[1]

To demonstrate that the FOIA search was adequate, the agency must provide an affidavit "giving a reasonably detailed account of the search terms used and the type of search performed" and "averring that all files likely to contain responsive materials . . . were searched." *Oglesby v.*

---

[1] Plaintiff provides little evidence to substantiate many of the factual and legal claims in his brief. Besides the documents produced to him by the FBI, Plaintiff only attaches two documents as exhibits to his brief. The internet links that Plaintiff provides do not lead to any documents in many instances. He makes numerous allegations without the benefit of citation. It is often impossible to ascertain exactly what Plaintiff is relying on to support his claims, much less figure out whether the documents or cases actually say what Plaintiff claims they say.

*U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). *See Lechliter v. Rumsfeld*, 182 F. App'x 113, 115 (3d Cir. 2006). This is exactly what the FBI has done in this case. In its declaration, the FBI explained in detail how its records are kept and the way in which it searched its Central Records System and the Sentinel system using the Automated Case Support system. Hardy Dec. at ¶¶ 12-22. The FBI described how it searched the terms "Occupy Philly Movement," "Occupy Philly," and "Occupy Philadelphia" to identify investigative records responsive to Plaintiff's request. *Id*. at ¶ 20. The FBI's search also included a string breakdown of the search terms to automatically capture variations of the names or terms searched. *Id*. The FBI's search encompassed records from Headquarters as well as all of the FBI's field offices. *Id*.

Courts have repeatedly found that "[t]he adequacy of a search is not measured by its results, but rather by its method." *N.Y Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (finding that sufficiency of search is determined by the "appropriateness of the methods" used to carry it out, "not by the fruits of the search"); *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp.2d 749, 766 (E.D. Pa. 2008) (holding that court's determination "focuses on the appropriateness of the search methods used and not on what the search produces or does not produce"). A search is "adequate" if it was "reasonably calculated to discover" documents responsive to the FOIA request. *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 489 (2d Cir. 1999). The FBI's detailed declaration shows that its search was reasonably calculated to locate the records Plaintiff requested. *Id*. at ¶¶ 12-22.

Moreover, courts have held that the reasonableness of the agency's search is not undermined by the requester's "[m]ere speculation that as yet uncovered documents may exist."

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). An agency's declarations are entitled to "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id*. at 1200, *quoting Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). Plaintiff's vague insinuation that documents purportedly produced in other FOIA cases somehow suggests that there may be additional documents responsive to this FOIA request is just that sort of speculation and does not cast doubt on the adequacy of the agency's search. *See Attkisson v. U.S. Dep't of Justice*, No. 14-1944, 2016 WL 4687239, at *3 (D.D.C. Sept. 7, 2016).

## II. THE FBI PROPERLY WITHHELD CERTAIN INFORMATION UNDER FOIA

### A. The FBI Properly Redacted Personal Information under Exemptions 6 and 7(C)

Pursuant to Exemptions 6 and 7(C), the FBI redacted the names and identifying information of FBI special agents, FBI support personnel, and local law enforcement personnel from the documents produced to Plaintiff. Hardy Dec. at ¶¶ 32-34. The FBI redacted this personal information to protect these individuals not only from publicity that could seriously prejudice their effectiveness in other investigations, but from potential harassment. *Id*. The FBI determined that there was no public interest in disclosing the identities of these individuals because the information would not significantly increase the public's understanding of the operations and activities of the FBI or local law enforcement. *Id*.

Under Exemption 6, an agency may protect from disclosure information that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Given the clear privacy interest in the names and identifying information of FBI and other law enforcement

personnel and the lack of any relevant public interest, the FBI redacted this personal information from the documents that it produced to Plaintiff. Hardy Dec. at ¶¶ 32-34.

Plaintiff's only response to the FBI's position is his contention, in a footnote, that "[t]he FBI has not provided any factual basis for the application of Exemption 6." Plaintiff's Brief at 23, n. 2. Plaintiff completely ignores the FBI's detailed declaration setting forth the factual basis for its redactions of this personal information under Exemption 6. *See* Hardy Dec. at ¶¶ 29-34. Plaintiff not only fails to address the case law cited by the FBI to support its use of Exemption 6 but cites no case law or other legal authority to support his argument. There can be no doubt that the FBI properly redacted this personal information pursuant to Exemption 6.

The FBI also relied on Exemption 7(C) to support its redaction of the names and identifying information of the FBI and local law enforcement personnel. *See* Hardy Dec. ¶¶ 26-34. Under Exemption 7(C), an agency need not disclose information compiled for law enforcement purposes if the disclosure of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To establish that the information was compiled for law enforcement purposes, the agency must make a "colorable claim" that the records were compiled while exercising its law enforcement authority. *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 185-86 (3d Cir. 2007).

Plaintiff notes that the FBI compiled the records responsive to Plaintiff's request "in the course of investigations pertaining [to] computer intrusion matters, investigation of suspicious packages and anarchist activities." *Id*. at 21, *quoting* Hardy Dec. at ¶ 27. Plaintiff argues, however, that "[t]here is no way to determine how the FBI classifies the term 'anarchist'" and surmises that it may include activities protected by the First Amendment. *Id*. at 22. Because the

FBI's activities could have been for some alleged improper purpose, Plaintiff contends that the FBI has failed to show that the records were compiled for "law enforcement purposes." *Id*. at 22. Plaintiff also argues that the FBI failed to explain what law enforcement purpose was initiated to cause the creation of the redacted documents. *Id*. at 22-23.

Plaintiff acknowledges that the FBI stated in its declaration that it compiled the records responsive to Plaintiff's request "in the course of investigations pertaining [to] computer intrusion matters, investigation of suspicious packages and anarchist activities." Plaintiff's Brief at 21, *quoting* Hardy Dec. at ¶ 27. However, while Plaintiff focuses on the reference to anarchist activities, he completely ignores the other two investigations that led to the compilation of these records: computer intrusions and investigation of suspicious packages, both of which are explicitly referenced in the documents produced to Plaintiff. *See* Plaintiff's Brief, Exhibit A at 1, 5. These investigations show that the records were compiled by the FBI while exercising its law enforcement authority and are a sufficient basis to justify the use of Exemption 7.

Moreover, Plaintiff's conjecture that the FBI's investigation into "anarchist activities" may include some kind of protected activity is without any factual basis. Plaintiff concedes that he has "no way" to determine how the FBI used the term "anarchist" or whether it constituted a proper subject of law enforcement. Plaintiff's Brief at 22. The documents produced to Plaintiff specifically reference the discovery of "graffiti bearing anarchist tags." Plaintiff's Brief, Exhibit A at 7. A common definition of the term anarchist is "one who uses violent means to overthrow the established order." Merriam-Webster, http://www.merriam-webster.com/dictionary/anarchist. It would certainly be permissible for the FBI to investigate potentially violent or unlawful activities. In short, Plaintiff's speculation that FBI investigation might have been initiated for

some improper purpose, in the admitted absence of any evidence, does not undermine the FBI's use of Exemption 7(C) to protect this personal information from disclosure.

**B. The FBI Properly Withheld Information under Exemption 7(D)**

Plaintiff does not dispute the FBI withheld from disclosure "the permanent source symbol number of a confidential source of the FBI" that would disclose the identity of the confidential source. Hardy Dec. at ¶¶ 37-38. Plaintiff asserts, however, that the FBI improperly withheld this information under Exemption 7(D) because the confidential source "was presumably sent to infiltrate and report on the political activities of the Occupy Philly Movement." Plaintiff's Brief at 23-24. Once again, Plaintiff is apparently arguing that the FBI's investigation was somehow improper because it was not conducted for a legitimate law enforcement purpose.

Plaintiff's argument here, like his argument concerning Exemption 7(C), consists of nothing more than unsupported speculation. Plaintiff offers no evidence to support his supposition that a confidential informant was "presumably" sent to report on the "political activities" of Occupy Philly, much less any evidence that the confidential informant actually did so. Plaintiff's Brief at 23. Nor does he offer any case law or other legal authority to suggest that the FBI would be barred from relying on Exemption 7(D) merely because it may have used a confidential informant to report on the matters being legitimately investigated by the FBI. Indeed, the documents produced to Plaintiff show that the FBI used Exemption 7(D) in connection with its investigation of computer intrusion matters, not "political activities" as Plaintiff contends. Plaintiff's Brief, Exhibit A. In any event, it is well-established that an agency's affidavits enjoy "a presumption of good faith," *Samahon v. U.S. Dep't of Justice*, No. 13-6462, 2015 WL 857358, at *5 (E.D. Pa. Feb. 27, 2015), and Plaintiff has offered nothing to

undermine that presumption or otherwise show that the FBI did not properly invoke Exemption 7(D) to protect the identify of a confidential source.

### C. **The FBI Properly Withheld Information under Exemption 7(E)**

Under Exemption 7(E), an agency is not required to disclose records or information compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The FBI relied on Exemption 7(E) to protect identifiers for non-public databases, information disclosing the location and identity of FBI units and/or joint units involved in the investigations at issue, and certain sensitive case file numbers. Hardy Dec. at ¶¶ 42-44.

In his brief, Plaintiff does nothing more than observe that Exemption 7(E) was not intended to protect routine procedures or techniques already well-known to the public. *See* Plaintiff's Brief at 24. Plaintiff does not argue, much less demonstrate, that any of the information that the FBI redacted under Exemption 7(E) concerned routine procedures or techniques already well-known to the public. Nor does Plaintiff make any other argument about why the FBI was not entitled to rely on Exemption 7(E) to protect the specific information at issue in this case. The FBI has shown in its declaration that the release of these non-public techniques and information "might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), *quoting Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009), and thus the FBI properly withheld this information under Exemption 7(E).

## III. THE NSA AND CIA PROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OR NONEXISTENCE OF RESPONSIVE DOCUMENTS

The NSA and CIA have issued a *Glomar* response in which they refused to confirm or deny the existence or nonexistence of any documents responsive to the Plaintiff's FOIA request. *See* Declaration of David J. Sherman dated September 9, 2016 ("Sherman Dec."), attached as Exhibit 2 to Defendants' Motion for Summary Judgment, at ¶¶ 16-23; Declaration of Antoinette B. Shiner dated September 9, 2016 ("Shiner Dec."), attached as Exhibit 3 to Defendants' Motion for Summary Judgment, at ¶¶ 15-22. An agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007), *quoting Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). This type of response is expressly authorized by Executive Order 13526. *See* Exec. Order No. 13526, §3.6(a), 75 Fed. Reg. 707, 719 (Dec. 29, 2009).

In their declarations, the NSA and CIA demonstrated that confirming or denying the existence or nonexistence of responsive records in this case would disclose information that was classified under Executive Order 13526. *See* Sherman Dec. at ¶¶ 16-23; Shiner Dec. at ¶¶ 15-22. The agencies further showed that confirming the existence or nonexistence of responsive records could reasonably be expected to harm national security. *See* Sherman Dec. at ¶ 18; Shiner Dec. at ¶ 22. The NSA and CIA thus properly invoked Exemption 1 to shield classified information from disclosure.

The NSA and CIA also established that their responses were justified by Exemption 3, which provides that an agency need not release information that is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The NSA showed in detail how Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605; 18 U.S.C. § 798; and the National

Security Act, as amended, 50 U.S.C. § 3024(i)(1), all justified the agency's response to Plaintiff's FOIA request. Sherman Dec. at ¶¶ 24-30. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Brief") at 21-24. The CIA similarly showed how the National Security Act, as amended, 50 U.S.C. § 3024(i)(1), justified its *Glomar* response. Shiner Dec. at ¶¶ 23-25. *See* Defendants' Brief at 24.

Plaintiff broadly claims that "[t]he FOIA Exemptions 1 and 3 are not properly invoked by the government in this case." Plaintiff's Brief at 28. Plaintiff, however, never challenges any of the facts set forth in the agencies' declarations showing that they invoked Exemption 1 to protect information that was appropriately classified. He does not respond to the legal arguments made by the NSA and CIA concerning the applicability of Exemption 1 or even cite any case law dealing with Exemption 1 in his brief. Plaintiff does not mention Executive Order 13526, the executive order classifying this information on which both the NSA and CIA relied for their response. Simply put, Plaintiff's brief is devoid of any factual or legal arguments that could possibly show that the NSA and CIA did not properly rely on Exemption 1.

Plaintiff does not say much more about Exemption 3. In a single paragraph without any citations, Plaintiff states that the agencies can only invoke Exemption 3 "with respect to records that are specifically exempted from disclosure by statute" and argues that records pertaining to "an illegal surveillance program would not fall under the Exemption 3." Plaintiff's Brief at 29. Plaintiff's argument is a non-sequitur that has nothing to do with this case.

Plaintiff does not address any of the factual allegations in the declarations submitted by the NSA and CIA justifying the use of Exemption 3, other than to claim that the agencies used boilerplate language and to wonder why the agencies did not discuss various unrelated matters.

Plaintiff's Brief at 37-39. Plaintiff does not provide any legal analysis of the standards applicable to Exemption 3. Plaintiff does not even cite, much less discuss, the three specific statutes relied upon by NSA and CIA to justify their reliance on Exemption 3. Indeed, Plaintiff's brief is notable primarily for its failure to engage with any of the specific arguments raised by the NSA and CIA to support their use of Exemptions 1 and 3.

Instead of responding to the NSA and CIA's arguments, Plaintiff spends most of the brief claiming that over the years the NSA and CIA have engaged in improper surveillance of activities protected by the First Amendment. *See* Plaintiff's Brief at 26-27. In an effort to support his claim, Plaintiff vaguely refers to the Church Committee report, which is almost 40 years old and has nothing to do with this case. *Id*. at 26-27. He mentions a newspaper article, which is inadmissible hearsay, concerning a former CIA employee who supposedly became involved with the New York City Police Department shortly after 9/11. *Id*. at 31-34, 37. Plaintiff discusses several cases, some of which are still pending, in which different parties have brought various claims against the NSA or CIA, without ever explaining what relevance these cases have to the specific issues in this case. *Id*. at 34-36, 39. Finally, Plaintiff attaches as an exhibit portions of an Office of Inspector General report finding "no evidence" that CIA employees violated Executive Order 12333 or the National Security Act of 1947 in cooperating with the New York Police Department following 9/11. Plaintiff's Brief, Exhibit C at 1. Plaintiff's unsubstantiated assertions about the NSA and CIA in unrelated matters do not remotely show that the NSA and CIA engaged in illegal surveillance or improperly invoked Exemptions 1 and 3 in this case.

It is well-established that the sufficiency of agency affidavits "is not undermined by mere allegations of agency misrepresentation or bad faith nor by agency misconduct in other unrelated

cases." *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Plaintiff has not offered any evidence that either contradicts the information in the agency affidavits or shows bad faith and thus summary judgment in favor of the NSA and CIA is appropriate. *See Amer. Friends Serv. Comm. v. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987).

As a last resort, Plaintiff requests that the Court order the NSA and CIA "to produce records for an in camera inspection." Plaintiff's Brief at 40. Besides the fact that Plaintiff has shown no basis for any *in camera* inspection, such a request makes even less sense where the NSA and CIA have provided a *Glomar* response neither confirming nor denying the existence or nonexistence of any records.

The FOIA permits a court to conduct an *in camera* review of the records that an agency has withheld, 5 U.S.C. § 552(a)(4)(B), and the decision to review an agency's records is within the discretion of the court. *See, e.g.*, *Hinton v. Dep't of Justice*, 844 F.2d 126, 128 (3d Cir. 1988). The Third Circuit has held, however, that *in camera* review should not be resorted to "routinely on the theory that it can't hurt." *Ferri v. Bell*, 645 F.2d 1213, 1225-26 (3d Cir. 1981). An *in camera* review is not appropriate if the agency affidavits are sufficiently specific and there is no evidence of bad faith. *Berger v IRS*, 288 F. App'x 829, 834 (3d Cir. 2008). *See Hayden*, 608 F.2d at 1387 ("When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate"). Courts have also found an *in camera* review unnecessary in cases where an agency asserted a *Glomar* response. *See, e.g.*, *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) (holding that *in camera* review not required where affidavits "sufficiently allege the necessity of the *Glomar* response"); *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (noting that when an agency issues a *Glomar* response, "there are no relevant documents for the

court to examine other than the affidavits which explain the Agency's refusal"); *Pipko v. CIA*, 312 F.Supp.2d 669, 680 (D.N.J. 2004) ("when [an agency] adequately meets its burden of justifying FOIA exemptions through affidavits or declarations . . . there is no need for a court to conduct an *in camera* review of records").

Plaintiff offers no reason why an *in camera* inspection would be necessary or useful. Given that the NSA and CIA have submitted detailed declarations setting forth the factual and legal basis for their *Glomar* response, and Plaintiff has proffered no evidence that either contradicts the agency affidavits or demonstrates bad faith, an *in camera* inspection is not appropriate in this case.

**CONCLUSION**

For all the reasons set forth above and in its original brief, Defendants respectfully request that the Court grant their motion for summary judgment.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

/s/ Margaret L. Hutchinson
MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division

/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
TEL: (215) 861-8316
rick.mentzinger@usdoj.gov

Dated: November 6, 2016

**CERTIFICATE OF SERVICE**

I, Richard Mentzinger, Jr., hereby certify that, on the 6th day of November, 2016, I caused a copy of the foregoing Defendants' Reply Brief in Support of Defendants' Motion for Summary Judgment to be served by ECF and first class mail, postage prepaid upon:

Paul J. Hetznecker, Esq.
1420 Walnut Street
Suite 911
Philadelphia, PA 19102

/s/ Richard Mentzinger, Jr.
RICHARD MENTZINGER, JR.
Assistant United States Attorney