IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL HETZNECKER, | : | |
|       Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL SECURITY AGENCY, | : | |
| CENTRAL INTELLIGENCE | : | |
| AGENCY, and FEDERAL BUREAU | : | |
| OF INVESTIGATION, | : | No. 16-945 |
|       Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                                                                                       **January 20, 2017**

        Paul Hetznecker represented various members of the "Occupy Philly" movement in a civil action against the City of Philadelphia and certain police officials. After the conclusion of that lawsuit, Hetznecker requested documents under the Freedom of Information Act ("FOIA") related to Occupy Philly from the National Security Agency ("NSA"), the Central Intelligence Agency ("CIA"), and the Federal Bureau of Investigation ("FBI"). After the requests were denied, Hetznecker commenced this action. The Defendants moved for summary judgment. The Court ordered the agencies to submit documents for *in camera* review without deciding the summary judgment motion. The NSA and the CIA moved the Court to reconsider its order. FOIA grants broad discretion to district courts to conduct *in camera* review and exercising that broad discretion, the Court will deny the motion.

### I.    BACKGROUND

        Under FOIA, Hetznecker requested documents concerning the Occupy Philly movement from the NSA, CIA, and FBI. (Decl. David J. Sherman Ex. A; Decl. Antoinette B. Shiner Ex. A;

Decl. David M. Hardy Ex. A.) The NSA stated it could neither confirm nor deny whether it had records responsive to Hetznecker's request (known as a "*Glomar* Response"[1]), claiming the existence or nonexistence of the records is exempt from disclosure. (Decl. David J. Sherman 2.) The CIA initially turned Hetznecker away, stating it was not involved in domestic law enforcement and directing him instead to the FBI. (Decl. Antoinette B. Shiner Ex. B.) After Hetznecker sued, the CIA also adopted a *Glomar* Response claiming Exemptions 1 and 3. (*Id.* at 7.)

The NSA, CIA, and FBI jointly moved for summary judgment. (Def.'s Mot. Summ. J.) Without deciding the motion, the Court ordered the NSA and the CIA (collectively, "the Agencies") to conduct a search for responsive records, to compile *Vaughn* Indices[2], and to submit the indices for *in camera* review. (Order, ECF No. 14.) In order to preserve the *Glomar* Responses, the Court required the Agencies to submit the indices regardless of whether or not the searches yielded any records. (*Id.* at ¶ 3.) If the Court deems additional review necessary, the Court will order *in camera* disclosure of the agency records *ex parte*. (*Id.*) In response, the NSA and the CIA filed for reconsideration of the Court's Order. (Defs. NSA & CIA Mot. Recons.)

## II.     STANDARD OF REVIEW

Motions for reconsideration are designed to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). The motion should only be granted when one of the following is established: "(1) an

---

[1] *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).
[2] A "*Vaughn* Index" is "an affidavit that supplies an index of withheld documents and details the agency's justification for claiming an exemption." *Patterson v. FBI*, 893 F.2d 595, 599 n.7 (3d Cir. 1990).

intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Motions for reconsideration should neither "raise new arguments that could have been made in support of the original motion," *McNeal v. Maritank Phila., Inc.*, Civ. A. No. 97-890, 1999 U.S. Dist. LEXIS 895, at *12 (E.D. Pa. Jan. 29, 1999), nor ask the court to "rethink a decision that it has already made," *Tobin v. Gen. Elec. Co.*, Civ. A. No. 95-4003, 1998 U.S. Dist. LEXIS 693, at *4 (E.D. Pa. Jan. 26, 1998).

### III. DISCUSSION

The NSA and the CIA argue that the Court committed a clear error of law when it ordered *in camera* review following their *Glomar* Responses. (Mem. of Law in Supp. of Defs. NSA and CIA Mot. for Recons. 7.) The Agencies also argue that the Court erred as a matter of law by declining to decide if the Agencies' pubic affidavits are sufficient to justify the *Glomar* Responses before ordering *in camera* review. (*Id.* 8.) Because the Court did not commit a clear error of law in ordering *in camera* review, there is no need to evaluate the *Glomar* Responses.

#### A. Discretion and *In Camera* Review

The purpose of FOIA is to "contribute significantly to public understanding of the operations or activities of the Government." *U.S. DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989) (quoting 5 C.F.R. § 2604.503(c)(1)). FOIA accomplishes this by requiring agencies to make certain information available for public inspection. 5 U.S.C. § 552(a). Agencies may claim certain records exempt from FOIA if they fall into one of nine enumerated

3

categories, including national security (Exemption 1) and exempt by statute (Exemption 3). § 552(b).

Under FOIA, the judiciary oversees government agency action through both lawsuits filed by private parties and *in camera* review. 5 U.S.C. § 552(a)(4)(B). District courts have "broad discretion in determining whether *in camera* review is appropriate." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). "In both the ordinary and the exceptional case," the Third Circuit authorizes "*in camera* affidavits and submissions." *Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 922 (3d Cir. 1981). "*In camera* inspection does not depend on a finding or even tentative finding of bad faith." *Ferri v. Bell*, 645 F.2d 1213, 1226 (3d Cir. 1981).

Before resorting to *in camera* review, the district court "must strive to make the public record as complete as possible." *Patterson v. FBI*, 893 F.2d 595, 599 (3d Cir. 1990), *cert. denied*, 480 U.S. 812 (1990). However, "to the extent that any public affidavits may appear sufficiently descriptive, it may nonetheless be necessary for the district court to examine the withheld documents *in camera* to determine whether the agency properly characterized the information as exempt." *Id.* This is true even in the *Glomar* context where a public "*Vaughn* Index would require an agency to disclose the very information that it seeks to withhold." *Id.*

The facts of *Patterson* are relevant to the disposition of this motion. *Patterson* involved a sixth-grader's quest to compile an encyclopedia of the world by requesting information via letters from 169 different countries. *Id.* at 597. The flood of responses attracted the attention of the FBI, which sent an agent in late 1983 to interview the young Patterson and his parents. *Id.* The FBI maintained that its investigation of Patterson ended in 1983, yet the Pattersons claimed that after 1983, their mail was still tampered with and their phone lines were still tapped. *Id.* at

4

598. Following Patterson's FOIA request for his investigatory file, the FBI filed for summary judgment, asserting the requested records fell under Exemption 1 of FOIA. *Id.* After oral argument on the motion for summary judgment, the district court ordered *in camera* review of the FBI's records. *Patterson v. FBI*, 705 F. Supp. 1033, 1038 (D.N.J. 1989). While *Patterson* occurred before "*Glomar* Response" made its way into legal parlance,[3] the existence or nonexistence of records post-1983 was in dispute. A public *Vaughn* Index of all of the FBI's records on Patterson would disclose whether or not surveillance continued after 1983, a fact which the FBI claimed fell under Exemption 1 of FOIA. Nevertheless, the Third Circuit upheld the district court's exercise of discretion in ordering *in camera* review even when the district court "found that [the] affidavits constituted sufficient proof of the privileged nature of the withheld information." *Patterson*, 893 F.3d at 599. In other words, even with a sufficiently detailed affidavit, the district court may still conduct *in camera* review when the agency claims the existence or nonexistence of certain records falls under an exemption of FOIA. *See id.*

In this case, the Agencies asserted *Glomar* Responses on summary judgment and submitted public affidavits. The Court subsequently ordered the Agencies to each compile and submit a *Vaughn* Index *in camera*. While the Court reserves judgment on the sufficiency of the affidavits, even if they are sufficient, *Patterson* allows the district court to conduct *in camera* review at this stage. *Id.*

---

[3] *Patterson* does not use the exact phrase "Glomar Response" because the phrase was not coined until *Benavides v. Drug Enforcement Agency*, which the D.C. Circuit decided two years later. 968 F.2d 1243, 1245 (D.C. Cir. 1992) ("This is called a Glomar [R]esponse, after *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976), which concerned a request for records about the "Glomar Explorer.'"). Both *Patterson* and *Benavides* cite *Phillippi*. *Id.*; *Patterson*, 893 F.2d at 599.

5

"Who will watch the watchmen?" Juvenal, The Satires, Book 6, line 347 ("*Quis custodiet ipsos custodes*?"). Without this important judicial oversight, agencies would become judge and jury of their own characterizations of records. Courts often defer to agencies on national security as the agency's "information, experience, and expertise" are matters generally outside of the Court's purview. *Am. Friends Serv. Comm. v. U.S. Dep't of Def.*, 831 F.2d 441, 447 (3d Cir. 1987). But the district judge must make a final determination at summary judgment, and *in camera* review aids in that process. *Ferri v. Bell*, 645 F.2d 1213, 1226 (3d Cir. 1981) ("[W]hen the district judge is concerned that he is not prepared to make a responsible de novo determination in the absence of *in camera* inspection, he may proceed *in camera* without anxiety that the law interposes an extraordinary hurdle to such an inspection.").

Because this is a purely domestic record request of two internationally-focused agencies, the Court feels it must tread carefully, taking all responsible steps in order to arrive at the correct outcome. It therefore behooves the court to exercise its discretion under FOIA to conduct *in camera* review.

### B.     *Glomar* and the Court's Order

Parties may assert *Glomar* Responses where the "fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citing *Phillippi*, 546 F.2d at 1011). In order to protect the integrity of the Agencies' *Glomar* Responses, the Court's Order took steps to ensure that the fact of the existence (or not) of agency records would not be disclosed to the public. The Court required the NSA and the CIA to each conduct a search for responsive records as a necessary precondition to compiling a *Vaughn* Index. Once the search is completed and the indices compiled, the Agencies must submit a *Vaughn* Index *in camera* "whether or not the above searches yield[ed] any responsive records."

6

(Order, ECF No. 14 ¶ 4.) Moreover, should either *Vaughn* Index prove insufficient and the Court require an examination of the agency records *in camera*, the subsequent Order will be filed *ex parte*.

After the Agencies' *in camera* disclosures, the Court will be able to rule on the outstanding summary judgment motion. In the interim, Hetznecker and the general public will not be privy to any further interactions, if they occur, between the Court and the Agencies since the Court will conduct them *ex parte*. Thus, the Court's order preserves the status quo by not revealing to Hetznecker or to the public whether documents responsive to his request exist and the Agencies suffer no manifest injustice.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is denied. An Order consistent with this Memorandum will be docketed separately.