IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL HETZNECKER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL SECURITY AGENCY, | : | |
| CENTRAL INTELLIGENCE | : | |
| AGENCY, and FEDERAL BUREAU | : | |
| OF INVESTIGATION, | : | No. 16-945 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                              August 23, 2017

In the fall of 2011, demonstrators descended on downtown Philadelphia, rallying around the belief that an elitist "1%" exploited the economy at the expense of the "99%." The protestors patterned themselves after a similar group in New York City, Occupy Wall Street, and the Occupy Philly movement was born. During one of the many marches throughout Occupy Philly's seven week lifespan, police arrested a number of the demonstrators. Paul Hetznecker represented the Occupy Philly members in a lawsuit brought against the City of Philadelphia stemming from those arrests.[1]

Concerned that federal authorities illegally spied on the Occupy Philly movement, Hetznecker requested documents under the Freedom of Information Act ("FOIA") from the Federal Bureau of Investigation ("FBI"), the National Security Agency ("NSA"), and the Central Intelligence Agency ("CIA"). The FBI provided seven pages of redacted documents, while the

---

[1] That case, *Augustine v. Ramsey*, Civ. A. No. 13-6606 (E.D. Pa. filed Nov. 13, 2013), members of the Occupy Philly movement alleged that the City of Philadelphia and several Philadelphia Police Department officers violated the Constitution and committed various state law torts in the course of arresting participants in one of Occupy Philly's marches. The litigation ultimately settled.

NSA and CIA denied the requests and issued *Glomar* responses. Hetznecker sued. Defendants moved for summary judgment, citing various exemptions to FOIA and, in the case of the NSA and CIA, the previously issued *Glomar* responses. To assist its decision on the motion for summary judgment, the Court ordered *in camera* review of unredacted documents from the FBI and *Vaughn* Indices from the NSA and CIA.

After conducting *in camera* review, the Court finds that the FBI conducted an adequate search and appropriately redacted the resulting documents, and that the NSA and CIA properly issued *Glomar* responses. Accordingly, the Court will grant Defendants' motion for summary judgment.

I. **BACKGROUND**

Hetznecker mailed similar FOIA requests to the FBI, NSA, and CIA related to federal involvement with the Occupy Philly movement. (Decl. David M. Hardy Ex. A; Decl. David J. Sherman Ex. A; Decl. Antoinette B. Shiner Ex. A.) Specifically, Hetznecker sought documents pertaining to "the Occupy Philly Movement, as well as Occupy encampments in cities around the country." (Decl. David M. Hardy Ex. A.) This was the only reference to a nationwide search. (*Id.*) Hetznecker's request also sought communications and government and law enforcement responses to the Occupy Philly Movement and the Occupy Philly encampments. (*Id.*) The request was made on behalf of the "general public's right to know." (*Id.*)

Having reviewed Hetznecker's request, the FBI conducted a search resulting in seven pages of documents. (Answer ¶ 18.) The FBI produced the seven pages of documents with

redactions. (*Id.*) The NSA issued a "*Glomar* response,"[2] which means that the agency could neither confirm nor deny whether it had records responsive to Hetznecker's request and that the existence or nonexistence of the records was protected from disclosure by certain FOIA exemptions. (Decl. David J. Sherman 2.) The CIA initially directed Hetznecker to the FBI because the CIA is not involved in domestic law enforcement. (Decl. Antoinette B. Shiner Ex. B.) After Hetznecker sued, the CIA also adopted a *Glomar* response, citing Exemptions 1 and 3. (*Id.* at 7.)

The FBI, NSA, and CIA jointly moved for summary judgment. (Defs.' Mot. Summ. J.) Without deciding the motion, the Court ordered the FBI to disclose *in camera* unredacted copies of the seven documents produced to Hetznecker. (Order, ECF No. 14.) The Court also ordered the NSA and CIA (collectively, "the Intelligence Agencies") to conduct a search for responsive records, to compile *Vaughn* Indices,[3] and to submit the indices for *in camera* review. In order to protect their *Glomar* responses, the Court required the Intelligence Agencies to make *in camera* submissions even if the searches failed to yield any documents. (*Id.* at ¶ 3.) In response, Defendants filed for reconsideration of the Court's Order. The Court denied the motion for reconsideration, citing the broad discretion afforded district courts to conduct *in camera* review. The Court subsequently reviewed the defendants' *in camera* submissions, and now is prepared to rule on the motion for summary judgment.

---

[2] *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).
[3] A "*Vaughn* Index" is "an affidavit that supplies an index of withheld documents and details the agency's justification for claiming an exemption." *Patterson v. FBI*, 893 F.2d 595, 599 n.7 (3d Cir. 1990).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In a FOIA case, "the burden is on the agency" in proving that it properly withheld records. 5 U.S.C. § 552(a)(4)(B); *see also* Fed. R. Civ. P. 56(a). District courts review an agency's decision to withhold documents de novo, and "may examine the contents of such agency records *in camera*" to decide summary judgment. § 552(a)(4)(B). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). "[T]he Government enjoys a good faith presumption in FOIA actions." *Piper v. Dep't of Justice*, 294 F. Supp. 2d 16, 24 (D.C. Cir. 2003).

## III. DISCUSSION

The Freedom of Information Act aims to "facilitate public access to government documents." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). "The statute is designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Id.* (quotation omitted). FOIA requires "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules," to "make the records promptly available to any person." § 552(a)(3)(A). Agencies must make "reasonable efforts to search for the records." *Id.* While there is a "general philosophy of full agency disclosure," *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976), FOIA provides nine categories of matters exempt from production, § 552(b)(1)–(9). "Congress sought to reach a

4

workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quotation omitted).

### A. The FBI

The FBI asserts that it conducted a reasonable search pursuant to Hetznecker's request, produced all relevant documents, and properly redacted those documents according to FOIA's exemptions. Hetznecker counters that the FBI did not conduct an adequate search for documents pursuant to his FOIA request, largely because the search only yielded seven documents. Hetznecker also claims the FBI improperly redacted the disclosed documents.

#### 1. Adequacy of the Search

To succeed on summary judgment in a FOIA case, "the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quotation marks omitted) (citing *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). In evaluating the adequacy of an agency's search, courts focus on the methods employed by the agency, not the results of the search. *See Abdelfattah v. Dep't Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) ("The relevant inquiry is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.").

"To demonstrate the adequacy of its search, the agency should provide a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched." *Lechliter v. Rumsfeld*, 182 F. App'x 113, 115 (3d Cir. 2006) (quotation marks omitted) (citing *Valencia-Lucena v. U.S. Coast*

*Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). "Speculation that uncovered documents may exist is insufficient to show that the agency's search was unreasonable." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).

David M. Hardy, Section Chief of the Record/Information Dissemination Section of the FBI, provided the declaration cataloging the FBI's search. (Decl. David M. Hardy.) According to Hardy, the FBI maintains the Central Records System ("CRS"), a comprehensive database compiling "applicant, investigative, intelligence, personnel, administrative, and general files" across "the entire FBI organization." (*Id.* ¶ 12.) The records are indexed by subject matter, including "individuals, organizations, events, or other subjects of investigative interest." (*Id.* ¶ 14.) The FBI "only indexes that information considered relevant and necessary for future retrieval." (*Id.* ¶ 15.) In response to Hetznecker's request, the FBI conducted an index search of CRS, encompassing all FBI field offices, with the terms "Occupy Philly Movement," "Occupy Philly," and "Occupy Philadelphia." (*Id.* ¶ 20.)

Courts have found that an FBI search of CRS files with satisfactory search terms is an adequate search. *See, e.g.*, *Robinson v. FBI*, Civ. A. No. 06-3359, U.S. Dist. LEXIS 121555, at *13–19 (E.D. Pa. Feb. 15, 2008); *see also Amuso v. Dep't of Justice*, 600 F. Supp. 2d 78, 89–90 (D.C. Cir. 2009). Hetznecker contends that the FBI search was inadequate because the FBI did not search for "Occupy encampments in cities around the country" as specified in his request. (Resp. Defs.' Mot. Summ. J. 13.) The Court spies a problem with Hetznecker's argument. Hetznecker's letter indicates "Occupy Philly" no fewer than eight times without any reference to different Occupy movements. In the context of the request, "Occupy" without more is reasonable shorthand for "Occupy Philly," and Hetznecker reasonably could have been asking for documents pertaining to the Occupy Philly movement in other cities. Without specifying *other*

6

Occupy movements across the country, as in movements separate and discrete from Occupy Philly, the FBI's search terms were "reasonably calculated to uncover all relevant documents." *See Morley*, 508 F.3d at 1114.

Hetznecker also insinuates that the FBI's search was inadequate because the search only returned seven documents. (Resp. Defs.' Mot. Summ. J. 13–21.) As a means of comparison, Hetznecker cites a laundry list of FOIA requests encompassing separate Occupy movements across the country which yielded thousands of responsive documents. (*Id.* at 14–17.) This is insufficient for two reasons. First, as discussed above, Hetznecker's request encompassed only the Occupy Philly movement, not any of the other movements across the country. Second, the mere fact that the FBI's search returned a small number of documents does not on its own entail the search was inadequate. *See Steinberg*, 23 F.3d at 552. Because the FBI employed appropriate search methods, the FBI conducted an adequate search. *See Abdelfattah*, 488 F.3d at 182.

### 2. Redactions

Agencies may redact information that falls under one of the FOIA exemptions as long as "the exemption under which the deletion is made [is] indicated." 5 U.S.C. § 552(b). FOIA requires that "[a]ny reasonably segregable portion of a record" be disclosed to the requester "after deletion of the portions which are exempt." *Id.* The FBI redacted portions of the seven responsive documents pursuant to Exemptions 6, 7(C), 7(D), and 7(E).

#### i. Exemption 6

Exemption 6 covers "personnel . . . files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6). The "primary purpose in enacting Exemption 6 was to protect individuals from the injury and embarrassment" resulting from "the unnecessary disclosure of personal information." *Dep't of State v. Washington Post*

*Co.*, 456 U.S. 595, 599 (1982). Exemption 6 is a "general exemption" broadly applying to "records . . . which can be identified as applying to that individual." *Id.* at 599, 602. Personal information may only be disclosed under FOIA if it "sheds light on an agency's performance of its statutory duties." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

After reviewing the documents *in camera*, the Court concludes that the FBI properly invoked Exemption 6. The FBI redacted names and identifying information of both Special Agents and support staff involved with the investigations. That personal information bears no relation to the FBI's "performance of its statutory duties" and was properly withheld. *See id.*

### ii. Exemption 7(C)

Exemption 7 broadly covers "records or information compiled for law enforcement purposes" but is limited to certain categories. § 552(b)(7). Exemption 7(C) covers information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C). Exemption 6 is narrower than Exemption 7(C), so "law enforcement records that are exempt under Exemption 6 will always be exempt under Exemption 7(C)." *Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 784 (E.D. Pa. 2008) (citing *Reporters Comm.*, 589 U.S. at 756, n.19.).

As the Court already held the FBI's redactions were proper under Exemption 6, the redactions are also proper under Exemption 7(C).

### iii. Exemption 7(D)

Exemption 7(D) encompasses records which "could reasonably be expected to disclose the identity of a confidential source," as well as information from that confidential source related to a "criminal investigation" or a "lawful national security intelligence investigation."

8

§ 552(b)(7)(D). A source is confidential if there is either an "express assurance of confidentiality" or "such an assurance could be reasonably inferred." *Dep't of Justice v. Landano*, 580 U.S. 165, 172 (1993) (quotation omitted).

After *in camera* review, the Court holds that the FBI properly redacted information covered by Exemption 7(D). The FBI redacted the unique identifying number of their confidential source, which could be used to ascertain the confidential source's identity. If FOIA required the FBI to disclose confidential source numbers, several FOIA requests across multiple investigations could be used to discern the identity of the confidential source. The FBI also redacted information from the confidential source because the nature of that information could be used to discover the identity of the source. As such, the FBI does not need to show that there is an ongoing criminal or national security investigation in order to justify the invocation of Exemption 7(D).

    iv.    **Exemption 7(E)**

Exemption 7(E) protects information which "would disclose techniques and procedures for law enforcement investigations or prosecutions." § 552(b)(7)(E). The agency has a "relatively low bar to justify" withholding documents under this exemption. *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) ("Rather than requiring a highly specific burden of showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.").

The FBI cited Exemption 7(E) in three categories of redactions. First, the FBI redacted non-public database identifiers. (Decl. David M. Hardy ¶ 42.) These databases "serve as repositories for counterterrorism and investigative data" and disclosure of the identifiers "could enable criminals to employ countermeasures to avoid detection." (*Id.*) Second, the FBI redacted

the locations and identities of units involved in the relevant investigations. (*Id.* at 43.) Finally, the FBI redacted sensitive case file numbers. (*Id.*)

After conducting *in camera* review, the Court holds the FBI properly redacted the documents pursuant to Exemption 7(E). The database identifiers could reasonably be used to "create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. While information about individual units and sensitive case file numbers may not create the same risk in a vacuum, repeated disclosures of the information across a range of investigations would allow suspects to piece together a more complete picture of the FBI investigation. The Third Circuit has found such a "mosaic analysis" to be a credible justification for withholding documents in a similar context. *See Davin v. Dep't of Justice*, 60 F.3d 1043, 1064–65 (3d Cir. 1995) (agreeing with the FBI's argument that a "mosaic analysis" could lead to unwarranted disclosure of substantive information protected by Exemption 2). Therefore, the Court will grant Defendants' motion for summary judgment with respect to the FBI.

### B. The Intelligence Agencies and *Glomar*

In certain situations, the "fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citing *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976)). Agencies may assert a "*Glomar* response," which effectively states the agency can neither confirm nor deny the existence of responsive documents. *Benavides v. DEA*, 968 F.2d 1243, 1245 (D.C. Cir. 1992). The agency must indicate which exemption justifies the *Glomar* response, as well as provide enough information for the court to evaluate the invocation of the response. *Cozen O'Connor*, 570 F. Supp. 2d at 786 (citing *Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992); *Phillippi*, 546 F.2d at 1014–15). One

exemption is sufficient to justify a *Glomar* response. *See, e.g.*, *Fund for Constitutional Gov't v. Nat'l Archives & Records Servs.*, 656 F.2d 856, 864 n.19 (D.C. Cir. 1981).

Exemption 1 states that FOIA disclosure provisions do not apply to matters "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13256 specifically authorizes the classification of certain information, among them "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). That Order further empowers an agency, in response to a FOIA request, to "refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors." *Id.*

The Court ordered the Intelligence Agencies to conduct searches for responsive records, to compile *Vaughn* Indices, regardless of whether or not the searches returned any responsive records, and to submit the *Vaughn* Indices for *in camera* review. The Intelligence Agencies complied and submitted their *Vaughn* Indices to the Court for *in camera* review. After reviewing the two *Vaughn* Indices, the Court is satisfied the Intelligence Agencies properly invoked a *Glomar* response. The existence or nonexistence of the Intelligence Agencies' responsive documents to Hetznecker's request falls within the scope of Exemption 1. Because one FOIA Exemption is sufficient to justify nondisclosure, the Court need not evaluate the Intelligence Agencies' invocation of Exemption 3. Thus, the Court will grant the Defendants' motion for summary judgment with regard to the NSA and CIA.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. An Order consistent with this Memorandum will be docketed separately.